IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MG GLOBAL INVESTMENT, LLC,,
          Plaintiff,

vs.                                        Case No.:  3:15cv535/MCR/EMT

UNITED STATES OF AMERICA, et al.,
          Defendants.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Cross-Motions for Summary Judgment filed by Plaintiff MG Global Investment, LLC ("MG Global") (ECF No. 18) and Defendants United States of America; Jeh Johnson, Secretary of Homeland Security; Leon Rodriguez, Director of United States Citizenship and Immigration Services ("USCIS"); and Ron Rosenberg, Chief of the USCIS Administrative Appeals Office ("AAO") (ECF No. 17).  Plaintiff and Defendants both filed responses to the cross-motions (ECF Nos. 19, 20), and both have filed replies thereto (ECF Nos. 21, 22). The case was referred to the undersigned to conduct all preliminary proceedings and issue any recommendations to the district court regarding dispositive motions (ECF No. 7).  *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties,

it is the opinion of the undersigned that Defendants' motion for summary judgment should be granted and this cause dismissed.

I.      BACKGROUND AND INTRODUCTION

Plaintiff MG Global Investment, LLC ("MG Global") is a Florida Limited Liability Company operating in Fort Walton Beach, FL.  MG Global is engaged in real estate speculation and renovation as a branch of a Turkish corporation, ASFA International Construction Industry & Trade, Inc. ("ASFA").

On June 24, 2014, MG Global filed with the USCIS an I-129 Petition for a Non-Immigrant Worker, seeking to classify Mehmet Guven ("beneficiary" or "Guven") as an "L-1A" non-immigrant intracompany manager transferee pursuant to 8 U.S.C. § 1101(a)(15)(L), so that Guven, a citizen of the Republic of Turkey, could transfer to MG Global in its new Fort Walton office as a Research & Development Manager ("R&D Manager").  Under this procedure, an employer seeks to temporarily transfer a manager or executive from one of its affiliated foreign offices to its United States office under an L-1A classification.  *See* 8 C.F.R. § 214.2(l)(2)(I).  If USCIS denies the petition, the employer-petitioner may administratively appeal to the USCIS Administrative Appeals Office ("AAO"). The AAO's decision affirming denial is deemed the final agency action, which is then subject to judicial review.

In the case at bar, MG Global's Petition and appeal were dismissed for failure to demonstrate:  (1) that Guven as the beneficiary would be employed in a qualifying managerial capacity, and (2) that the Fort Walton office, as a new office, would support a managerial position within one year of approval of the Petition.  *See* 8 U.S.C. § 1101(a)(44); 8 C.F.R. § 214.2(l)(3).  In the instant Complaint for declaratory relief, MG Global now seeks judicial review of the above administrative decisions under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*., to request that the court declare the dismissal of MG Global's Petition contrary to law and to order that the Petition be approved.

## II.    STANDARD OF REVIEW

The AAO's final agency action upholding the denial of Plaintiff's Petition and dismissing the appeal is subject to review under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701.  The AAO's decision may be set aside only if found "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see also* <u>Camp v. Pitts</u>, 411 U.S. 138, 142, 93 S. Ct. 1241, 1244, 36 L. Ed. 2d 106 (1973).  This standard of review is "exceedingly deferential." <u>Fund for Animals, Inc. v. Rice</u>, 85 F.3d 535, 541 (11th Cir. 1996). Thus:

> To determine whether an agency decision was arbitrary and capricious, the reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  This inquiry must be "searching and careful," but "the ultimate standard of review is a narrow one."  Along the standard of review continuum, the arbitrary and capricious standard gives an appellate court the least latitude in finding grounds for reversal; "[a]dministrative decisions should be set aside in this context . . . only for substantial procedural or substantive reasons as mandated by statute, . . . not simply because the court is unhappy with the result reached."  The agency must use its best judgment in balancing the substantive issues.  The reviewing court is not authorized to substitute its judgment for that of the agency concerning the wisdom or prudence of the proposed action.

*Id.* at 541–42 (quoting North Buckhead Civic Ass'n v. Skinner, 903 F.2d 1533, 1538–40 (11th Cir. 1990)).

In applying this standard, the administrative record is the sole basis for the Court's review.  *See* Camp, 411 U.S. at 142.  Therefore, the court ordinarily does not engage in additional factfinding but confines its analysis to whether, "on the basis of the record the agency provides, . . . the action passes muster under the appropriate APA standard of review." Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers, 87 F.3d 1242, 1246 (11th Cir. 1996) (quoting Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744, 105 S. Ct. 1598, 1607, 84 L. Ed. 2d 643 (1985)).  Under summary judgment review, the inquiry remains a matter of

whether the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, and the evidence is still viewed in the light most favorable to the non-moving party. Preserve Endangered Areas, 87 F.3d at 1246.  "However, even in the context of summary judgment, an agency action is entitled to great deference."  *Id.*; *see also* De Los Santos v. I. N. S., 690 F.2d 56, 60 (2d Cir. 1982) ("It is not the province of the courts to insist that INS's interpretations of the Act result in the perfect immigration scheme, or even that they be the best interpretations possible.  Rather INS is given a fair amount of latitude to exercise its judgment as to what interpretations will best effectuate the goals of the Act.  Since INS's strict interpretation is consistent with the language and history of the Act and is, as a general matter, reasonably calculated to serve the purposes of the Act, it is entitled to deference, and we will not invalidate it because in the present instance its usefulness may be tenuous.").  Thus, the court's inquiry focuses on whether the agency decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment."  Marsh v. Oregon Natural Resources Council, 109 S. Ct. 1851, 1861, 490 U.S. 360, 378 (1989).

III.    DISCUSSION

The first basis for the AAO's decision was that Plaintiff failed to demonstrate that Guven's employment would be in a managerial capacity.  Under this requirement, employment is considered to be of a "managerial capacity" if the position is one in which the employee "primarily manages the organization, or a department, subdivision, function, or component of the organization."   8 U.S.C. § 1101(a)(44)(A)(i); *see also* 8 C.F.R. § 214.2(1)(1)(ii)(B).   In order to determine whether the individual in question "primarily manages" the organization or a department thereof, courts have required that the specific nature of the individual's duties be described in sufficient detail.  *See* Republic of Transkei v. I.N.S., 923 F.2d 175, 177 (D.C. Cir. 1991); National Hand Tool Corp. v. Pasquarell, 889 F.2d 1472, 1476–77 (5th Cir. 1989); Khamisani v. Holder, 2011 WL 1232906, at *7 (S.D. Tex. Mar. 31, 2011).  In providing this detail, the petitioner must specify what proportion of the proposed beneficiary's duties would be managerial versus non-managerial; otherwise, it may be incumbent on the court to conclude that the duties are not primarily managerial.  *See* Republic of Transkei v. I.N.S., 923 F.2d 175, 177 (D.C. Cir. 1991); National Hand Tool Corp. v. Pasquarell, 889 F.2d 1472, 1476–77 (5th Cir. 1989); Khamisani v. Holder, No. H-100728, 2011 WL 1232906, at *7 (S.D. Tex. Mar. 31, 2011).

The holding in National Hand Tool Corp. is particularly instructive:

The critical point in this case is that there was a significant failure to make a factual showing that [the proposed beneficiary] Chang himself was "primarily" a manager.  Instead, the factual evidence shows that Chang spent most of his time "performing audits", not directing others in the preparation of audits.  His job description included

> . . . testing validity and accuracy of financial data throughout all ledgers, financial reporting and shareholder reporting.  Assists comptroller in preparation of monthly shareholder reports.  Verify all accounts payable voucher systems and expense reports and compare budgets against actual figures.  Verify monthly employee payroll figures and test for accuracy.

The evidence shows that Chang himself did much of the work in preparing these various reports and in engaging in these various activities.  The employees under him helped him make the reports, but did not themselves develop and make such reports.  Thus, it is clear from the facts that the evidence in this case did not establish that Chang was engaged "primarily" in managerial activities.  Instead, he was engaging in production activities himself.  As such, the decision of the district court is correct and is properly affirmed.

National Hand Tool Corp., 889 F.2d at 1476–77.

In the instant case, the AAO determined that the Petition failed to provide sufficient detail in its job description to show that Guven's duties would be primarily managerial within a year's time (ECF No. 15-1 at 8–9).  This determination was in turn based on the AAO's finding that the Petition did not contain adequate

information as to what Guven's duties would be on a daily basis so as to enable the

agency to ascertain the degree to which his duties would be managerial in nature (*id.*

at 9).  The AAO additionally noted that a significant portion of the duties that were

identified with specificity were not actually managerial-type tasks but regular tasks

necessary for the operation of the company's business functions (*id.* at 9–10).  Thus,

like the beneficiary in National Hand Tool Corp. who "spent most of his time

'performing audits,' not directing others in the preparation of audits," 889 F.2d at

1476, the AAO found—as does this court—that Guven's specific duties tend more

toward non-managerial, performance-oriented duties.

Further, the AAO found that the job descriptions that were provided in the

Petition tended to blend together both managerial and non-managerial tasks, such that

the AAO could not discern what proportion of Guven's time would actually be spent

on managerial tasks (*id.* at 10).[1]  Thus, the AAO found that while Guven might be

---

[1]  As the AAO noted, the Petition did contain a percentile breakdown of Guven's projected tasks as the R&D Manager, which were divided into the following four categories:

> 35% - Establish and implement tools and specific strategies to achieve operational goals as Research and Development Manager
> 25% - Oversee and manage the accounting department
> 15% - Liaise with vendors and professionals
> 25% - Supervise and control the work of other professional employees

(ECF No. 15 at 5–7).  However, the AAO made the following observation:

> Based on the current record, it is evident that significant portions of

responsible for some managerial duties in keeping with the company's goals and objectives, the evidence demonstrated that much of his daily duties would still be devoted to the functional tasks necessary to the operation of the business. Accordingly, the court disagrees with Plaintiff's assertion that there were sufficient details in the R&D Manager job description for the AAO to find that the position would be managerial.

Additionally, because Guven's position was that of a first-line supervisor, his position could be considered managerial in nature only if the employees he supervised were deemed to be professional.  *See* 8 U.S.C. § 1101(a)(44)(A) ("A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional.").  The Petition described only two employee positions that Guven

---

the Beneficiary's time will be spent on research, coordinating the work of contractors and payments to contractors, and various administrative functions and we are therefore unable to determine whether the claimed managerial duties would constitute the majority of the beneficiary's duties, or whether the beneficiary will primarily perform non-managerial administrative, operational and first-line supervisory duties by the end of the first year of operations. Although the Petitioner divided the Beneficiary's areas of responsibility into four categories and assigned a percentage to each area, each category includes non-qualifying duties.  Therefore, the Petitioner's description of the Beneficiary's job duties does not establish what proportion of his duties will be managerial in nature, and what proportion will be actually non-managerial.

Case No.:  3:15cv535/MCR/EMT

would be supervising, a Research Assistant (RA) and a Bookkeeper/IT Expert. Moreover, because the Bookkeeper/IT Expert was not expected to be hired until 2016, more than one year after the date of the Petition, only the RA position was considered in regard to this requirement (*id.* at 10).

In thus considering whether the RA position was a "professional," the AAO was primarily confronted with the fact that the RA position was stated to require a "Bachelor Degree in a business related field" (*id.* at 7, 10).   Under 8 U.S.C. § 1101(a)(32) it is provided that "the term 'profession' shall include but not be limited to architects, engineers, lawyers, physicians, surgeons, and teachers in elementary or secondary schools, colleges, academies, or seminaries."  The AAO opined: "The term 'profession' contemplates knowledge or learning, not merely skill, of an advanced type in a given field gained by a prolonged course of specialized instruction and study of at least baccalaureate level, which is a realistic prerequisite to entry into the particular field of endeavor" (*id.* at 10–11) (citing, *inter alia*, Matter of Ling, 13 I. & N. Dec. 35, 36, 1968 WL 14039, at *1 (Reg. Comm. 1968)).  The AAO then found:

> The possession of a bachelor's degree by a subordinate employee does not automatically lead to the conclusion that an employee is employed in a professional capacity as that term is defined above.  In the instant case, the Petitioner stated that the position of research assistant will require a bachelor's degree in a "business related field."  However, upon

review of the job description of the research assistant, it does not appear
that a degree would be necessary to perform duties such as "navigate and
operate any software or website specific to the company's needs" and be
responsible for "administrative duties" . . . .

(*id.* at 11).  Accordingly, based on the available evidence, the AAO determined that
Guven would have only occasional supervisory authority over nonprofessional
employees, which did not qualify the position as one which would become "primarily
managerial" within a year.

Plaintiff contends that the AAO impermissibly founded its holding on the fact
that the staff at the company's Fort Walton office would be small.  *See* Mars Jewelers,
Inc. v. I.N.S., 702 F. Supp. 1570, 1574 (N.D. Ga. 1988).  However, the AAO
recognized that it would be imprudent to rest its decision solely on the matter of size,
but it was wholly appropriate to consider it simply as a factor in its analysis (ECF No.
15-1 at 11–12) (citing Family Inc. v. USCIS, 469 F.3d 1313, 1315–16 (9th Cir. 2006);
Systronics Corp. v. INS, 153 F. Supp. 2d 7, 15 (D.D.C. 2001)).  This court's review
concurs with the AAO's own determination that it did not rest its decision solely on
staff size but considered the other factors outlined above.

Plaintiff also advances the argument that that Guven should have qualified as
a "function manager" under the statute because he would manage an "essential

function" of the company by overseeing the accounting and operations departments.

However, this argument fails for much the same reasons as provided in the "personnel

manager" analysis above.  As the AAO provided:

> The term "function manager" applies generally when a beneficiary does
> not supervise or control the work of a subordinate staff but instead
> is primarily responsible for managing an "essential function" within the
> organization.   *See* section 101(a)(44)(A)(ii) of the Act, 8 U.S.C.
> § 1101(a)(44)(A)(ii).  The term "essential function" is not defined by
> statute or regulation.  If a petitioner claims that the beneficiary is
> managing an essential function, the petitioner must furnish a written job
> offer that clearly describes the duties to be performed in managing the
> essential function, i.e., identify the function with specificity, articulate
> the essential nature of the function, and establish the proportion of the
> beneficiary's daily duties attributed to managing the essential function.
> *See* 8 C.F.R. § 214.2(1)(3)(ii).  In addition, the petitioner's description
> of the beneficiary's daily duties must demonstrate that the beneficiary
> manages the function rather than performs the duties related to the
> function.

(ECF No. 15-1 at 11).

The AAO then went on to find that the Petition lacked detail as to any

managerial functions for which Guven would be responsible.  Instead, Plaintiff argued

that, based on the fact that Guven's duties overseeing the accounting and operations

department would be complex in nature, these duties could not be accomplished by

anyone less than someone with professional or managerial experience.  Here again,

the AAO found that the described tasks, even if complex, did not demonstrate that

Guven would *manage* the functions of the accounting and operations departments so much as *perform* regular duties related to these departments (*id.*).[2]

Plaintiff contends that the AAO's analysis overlooks the fact that Guven would often be tasked with forming liaisons with vendors and subcontractors on the company's housing renovation projects and overseeing their work.  Plaintiff asserts that the AAO's opinion erroneously deemed these duties to be non-managerial.  In support, Plaintiff cites to a couple of administrative decisions, <u>Matter of Irish Dairy Board, Ltd.</u>, File No. A28-845-421 (AAU Nov. 16, 1989) (Copy provided at ECF No. 17-2, Ex. A), and <u>Matter of X</u>, 10 Imm. Rptr. B2-13 (AAU Apr. 13, 1992) (Copy

---

[2]  In particular, the AAO noted:

> The Petitioner maintains that a non-professional could not identify "speculation-worthy properties through the use of complicated software and search engines," determine what types of renovations would make a property profitable, ascertain the estimated costs of renovations, or understand the property closing procedures and understand HUD Settlement sheets. The Petitioner, however, provides no support for its assertion that a professional position equates with a qualifying function manager position. As discussed above, the Petitioner has not established that the Beneficiary's actual duties would be primarily managerial in nature and we cannot conclude that he would be employed as a function manager.

(ECF No. 15-1 at 11).

provided at (ECF No. 20-2, Ex. B).  As Defendants point out, however, these cases are not binding upon the AAO,[3] and they are otherwise distinguishable.

In <u>Irish Dairy Board</u>, the beneficiary duties were evaluated under a previous version of the relevant statute requiring that managers "plan, organize, direct and control an organization's major functions and work through other employees to achieve the organization's goals" (ECF No. 17-2 at 3).  The beneficiary in question did not perform any relevant duties himself but solely directed other companies that were under contract with his company to perform the duties necessary to the company's objective of importing dairy products into the United States.  The company was also "a complex business with numerous highly specialized organizational departments," and the beneficiary was "involved in high level participation in the formulation and execution of company policy," "primarily and solely responsible for the direction of the [company] with little or no supervision from the firm's board of directors" (*id.* at 3–4, ECF 17-1 at 30–31).

---

[3] *See, e.g.*, <u>Leal-Rodriguez v. INS</u>, 990 F.2d 939, 946 (7th Cir. 1993) ("We will not bind the BIA with a single non-precedential, unpublished decision any more than we ourselves are bound by our own unpublished orders."); <u>De Osorio v. INS</u>, 10 F.3d 1034, 1042 (4th Cir. 1993) ("[U]npublished precedent is a dubious basis for demonstrating the type of inconsistency which would warrant rejection of deference").

In <u>Matter of X</u>, the beneficiary was the "president" of a company engaged in property acquisition and renovation "in order to obtain scrap metal for export," and he played "a key role in overseeing technical operations" and had "ultimate authority over all . . . policies and objectives" (ECF No. 20-2 at 3).  Though he was identified as the sole employee of the company's operation, he had "the authority to hire and fire managerial and non-managerial personnel as well as the authority to contract with subcontractors on behalf of the petitioner" (*id.* at 4).  He "[did] not perform non-managerial tasks, but [did] manage and oversee those functions through subcontractors" (*id.*).

The above cases are distinguishable because the duties of the beneficiaries were found to be solely managerial in nature, while Guven was found to be substantially engaged in non- managerial activities as well.  Even if Guven's work with contractors were to be categorized as managerial, this work comprised only one facet of his duties amidst the other day-to-day tasks he performed as described in the AAO's opinion.  Additionally, the beneficiaries in the above cases were noted to have exercised senior-level decision-making for their respective companies without supervision, directing the expansive operations of others rather than performing those tasks themselves.  While Plaintiff asserts the same about Guven, the AAO in the

instant case found that the lack of staffing fairly led it to believe that within one year's time there would not be enough personnel growth to relieve Guven from his non-managerial, operational duties.  *See* <u>Brazil Quality Stones, Inc. v. Chertoff</u>, 531 F.3d 1063, 1070–71 (9th Cir. 2008) (finding that, without more detail, petitioner failed to meet its burden of demonstrating that beneficiary primarily managed or oversaw the essential functions of its business rather than performing them himself because beneficiary's involvement in company's daily operations remained necessary to its success and company's size had not reached the level where beneficiary could be viewed as primarily devoting his attention to managerial activities).

Defendants' point is also well-taken that the findings in <u>Irish Dairy Board</u> and <u>Matter of X</u>, because they are not set out in great detail, are difficult to compare with the instant case to determine whether they are factual analogues.  Nonetheless, these cases do appear to support the general proposition that a beneficiary's work with contractors may be construed as managerial.  However, even if the better view is that the AAO should have so construed Guven's liaison work with subcontractors, this amounts only to a difference of reasonable legal opinions, and does not render the AAO's decision arbitrary and capricious or an abuse of its discretion.  This court is

mindful that it should not substitute its judgment for that of the AAO simply because it might have considered an issue differently.

As a final point, Defendants assert that the AAO was within its discretion to find that the evidence failed to establish that Plaintiff's Fort Walton office would support a managerial position within one year's time.  Here, the AAO determined that it was unlikely that Guven would be relieved of his duties performing routine tasks for the business to operate when only one additional position was forecasted during the coming year, and that position, the RA, would not independently assume the daily operational/non-managerial duties so much as provide support and administrative for Guven.  *See* Q Data Consulting, Inc. v. I.N.S., 293 F. Supp. 2d 25, 29 (D.D.C. 2003) (finding it reasonable for INS to bolster its conclusion that beneficiary's duties would not be sufficiently managerial with finding that there would be insufficient staff to relieve her from performing non-managerial tasks herself).[4]  Thus, in keeping with its other findings on the earlier issues, the AAO reasonably found that much of the daily,

---

[4]  As the AAO observed, while Plaintiff stated that Guven would spend 25% of his time overseeing and managing the accounting department of the business, there were no plans in evidence for the company to actually hire any accounting staff during the first year, which only further persuaded the AAO that Guven would continue to perform those duties himself.

functional tasks would remain with Guven since there would be no other personnel to take those tasks from him.[5]

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1.     That the Motion for Summary Judgment filed by Plaintiff MG Global Investment, LLC (ECF No. 18) be **DENIED**:

2.     That the Motion for Summary Judgment filed by Defendants United States of America; Jeh Johnson, Secretary of Homeland Security; Leon Rodriguez, Director of United States Citizenship and Immigration Services; and Ron Rosenberg, Chief of the USCIS Administrative Appeals Office (ECF No. 17) be **GRANTED**.

3.     That Plaintiff's complaint for declaratory relief be **DISMISSED** and this case closed.

---

[5] The court notes a good deal of overlap between this issue and the earlier discussed issues where the size of the company, its personnel, and the character of Guven's duties were factors. Defendants' inclusion of this matter as a separate issue may have had a lot to do with the fact that Plaintiff, who later admitted the error (ECF No. 21 at 1–2), had mistakenly asserted that the administrative denial of the Petition failed to address the issue of whether the business enterprise would support Guven as a manager within one year.  Beyond that corrected mistake, Plaintiff poses no direct challenge to the AAO's finding on this issue, as much of its theory centers on the nature of Guven's business tasks, arguing essentially that they are of a managerial character from their inception.

At Pensacola, Florida, this 13<u>th</u> day of February 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.** <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**</u> **A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**